IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

PHILIP GERARD TURNER                                                        PLAINTIFF

V.                                                     CAUSE NO. 3:21-cv-289-HTW-LGI

AKILLIE MALONE OLIVER, INDIVIDUALLY
AND IN HER OFFICIAL CAPACITY AS DISTRICT ATTORNEY,
YAZOO COUNTY DISTRICT ATTORNEY'S OFFICE,
THE STATE OF MISSISSIPPI,
AND UNKNOWN DEFENDANTS A-D                                        DEFENDANTS

## DEFENDANTS' MEMORANDUM OF AUTHORITIES
## IN SUPPORT OF MOTION TO DISMISS

COME NOW, the  Defendants Akillie Malone Oliver, Individually and in Her

Official Capacity as District Attorney, the Yazoo County District Attorney's Office, and

the State of Mississippi, by and through their attorney of record, and file this their

Memorandum of Authorities in Support of Motion to Dismiss  pursuant to Federal Rules

of Civil Procedure 12(b)(6),  and in support thereof would show unto this Court the

following, to wit:

## I.  INTRODUCTION/PROCEDURAL POSTURE

On July 14, 2021 Plaintiff Philip Gerard Turner ("Turner") filed his Amended

Complaint against Defendants Akillie Malone Oliver ("Oliver"), Individually and in Her

Official Capacity as District Attorney, the Yazoo County District Attorney's Office, and

the State of Mississippi. Turner claimed violations of Due Process and the Equal

Protection Clauses of the United States Constitution. Turner also pled a host of state-

law based/common law claims, referenced in connection with Miss. Code Ann. § 11-46-

11.  Although Plaintiff fails to cite  42 U.S.C. § 1983 (Civil damage action for deprivation

of federal rights) or 42 U.S.C. § 1988 (Attorney fees in proceedings in vindication of civil

rights), as Plaintiff seeks monetary (rather than equitable) relief, as well as attorney

fees, and because  jurisdiction is expressly predicated upon 28 U.S.C. § 1343, movants

1

will treat the federal claims as being pled under Section 1983.

The gravamen of Plaintiff Phillip Gerard Turner's federal claims are all grounded in Oliver's District Attorneys Office decision to prosecute Turner, the principal at a public school where Oliver's child once attended. According to the Amended Complaint, apparently Turner and Oliver had a history of minor confrontations involving Oliver's son who attended the school. Amended Complaint at ¶ 4.  According to the Amended Complaint, Defendant Oliver went to Turner's school to investigate allegations against another public school official, one "Carter," the school resource officer, for an alleged assault against another minor child in Carter's charge (one only identified in the complaint as "J.B"). Amended Complaint at ¶ 5.  In conclusory fashion, Turner then alleges that Oliver  tried to get the witnesses to "implicate Turner in the assault of the child," but apparently the witnesses would not "corroborate [Oliver's] theory of assault." Amended Complaint at ¶ 5. The identity of these witnesses and the testimony allegedly suggested by Oliver is unknown and is not pled whatsoever. The Complaint continues:

> Oliver scheduled a probable cause hearing on or about September 19, 2019 for the school resource officer on one count of aggravated assault. Oliver subpoenaed Turner to testify at the probable cause hearing of Officer Carter. At some point during the probable cause hearing, Oliver advised that Principal Turner was a possible defendant in the action. As such, counsel for Principal Turner informed Oliver that Principal Turner would be invoking his 5th Amendment right and refusing to testify. Oliver was outraged at Turner exercising his constitutional right and emphatically asked his counsel, "So the Administrator of the building is refusing to testify on a student matter?" Oliver then told counsel, "That is going to cause some problems."

Amended Complaint at ¶ 5. As pointed out by these allegations, at the September 19, 2019 hearing concerning Officer Carter, Turner was represented by counsel.

Thereafter, "[b]ecause of the animosity against Turner,"

> Oliver determined to retaliate against him. Defendant Oliver initiated malicious false charges against Turner, and over four months after Officer Carter's probable cause hearing, an indictment was filed on January 31, 2020, charging Turner with Accessory after the Fact to Felonious Child Abuse. On more than one occasion, Oliver was questioned about the legitimacy of the charge and/or urged to drop the charges by the

authorities who were investigating the matter and members of her staff.

Amended Complaint at ¶ 6. Turner was then arrested, allegedly:

> [t]hrough false statements and withholding of material facts, Oliver caused Turner to be arrested and indicted by a grand jury.

Amended Complaint at ¶ 7. As to what those false statements actually were, the

Amended Complaint is somewhat vague, but apparently it has something to do with

notification of the minor victim's parents and youth court judge.  There are claims that

Oliver committed misconduct before a grand jury out of personal spite or ill will against

Turner:

> Oliver obtained the indictment by failing to state the correct information and by failing to inform the grand jury that Turner immediately notified the minor's parents when he alleged to be injured, and Turner immediately notified the School Superintendent and even the youth court judge of the incident. The Defendants further withheld exculpatory evidence and presented misleading information to the grand jury by stating that Turner helped Officer Carter evade arrest by testifying at the youth court matter involving the juvenile. This was simply untrue, and there was no factual basis to support such an allegation. In addition, the Defendants selectively prosecuted Turner, although they were aware that Turner, the Superintendent, Assistant Superintendent, and other Administrators were aware of the same information and none of these people, the Defendants included, reported the alleged abuse to Child Protective Services. Furthermore, the Defendants maliciously secured an indictment on Turner without subpoenaing any witnesses on his behalf for the grand jury. Specifically, the three witnesses at grand jury, Deputy Gann, Investigator with the Yazoo County Sheriff's Department, Mrs. White, and Mrs. Peterman, both teachers at Yazoo County High School, admitted that they were not asked any questions about the Plaintiff at grand jury.
>
> On August 27, 2020, in a pre-trial hearing before Judge Barry Ford, the three grand jury witnesses testified that all of the questions asked of them centered around Officer Carter at grand jury. In fact, they further admitted they were subpoenaed to testify in grand jury for the indictment of Officer Carter, not the Plaintiff. The Defendants purposely and maliciously neglected to ask the witnesses questions about the Plaintiff because their testimony would have exonerated him and prevented them from securing the Grand Jury Indictment. At all relevant times, the Defendants knew there was no probable cause for Plaintiff's indictment, yet they purposely and maliciously withheld material information in order to secure an arrest and indictment of Plaintiff. The evidence presented in the discovery barely supported the misdemeanor charge of Failure to Report, at best.

Amended Complaint at ¶ 8. After a further extended discussion concerning Plaintiff's

spouse's motion (the undersigned) to recuse the Yazoo County District Attorney's Office from prosecuting the case against her husband, Plaintiff Turner, and the eventual dismissal of the charge against Turner, Turner concludes in his Amended Complaint that "Defendants' actions against Plaintiff were not taken for any legitimate purpose or to bring him to justice, but were because of the malice and ill-will of Defendant Oliver." Amended Complaint at ¶ 12.   It is not alleged that Oliver either arrested Turner nor personally participated in his arrest for a charge of accessory after the fact, which was later dismissed. (Amended Complaint at ¶ 6).

Plaintiff's claims "for slander and defamation" are based in part on the defaming statements the Defendant published in her response to Plaintiff's motion to recuse her, and statements she made to news media and others where she blatantly lied by stating that the Plaintiff had been "expelled from high school, kicked off the basketball team at Mississippi State University, and received several complaints and/or convictions prior to his becoming Principal, among other things."  Amended Complaint at ¶ 13.  The identity of the newspaper referred to in this paragraph, and the exact quotes alleged to have been made by Oliver are not recounted.

Plaintiff concludes the Complaint by pleading  claims "for the torts of abuse of process, malicious prosecution, selective prosecution, false arrest and imprisonment. slander, negligence, gross negligence, intentional infliction of emotional distress, negligent infliction of emotional distress, and violations of Due Process and the Equal Protection Clause of the United States Constitution." Amended Complaint at ¶ 14. It is assumed that Turner's claims of abuse of process, selective prosecution, false imprisonment, slander, negligence, gross negligence, intentional infliction of emotional distress, and negligent infliction of emotional distress are state-law based as Turner continues that his "Fourteenth Amendment right to be free from arbitrary governmental action has been violated . . . [and]  Plaintiff's Fourth and Fourteenth Amendment rights

to be free from arrest without probable cause, and from abuse of process, and from malicious prosecution have been violated" (Amended Complaint at ¶ 14), tying these claims to the United States Constitutional protections.

## II.  STANDARDS

### A.    Fed. R. Civ. P. 12(b)(6)

Under Rule 12 (b)(6), the Court may dismiss a claim when the complaint fails to allege any set of facts upon which relief may be granted.  *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002).  In considering a motion to dismiss, the Court should view all factual allegations of the complaint in the light most favorable to the Plaintiff.  *Malina v. Gonzales*, 994 F.2d 1121, 1125 (5th Cir. 1993)  Legal conclusions and conclusory allegations which merely recite the elements of a claim are not well pled factual allegations.  *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

In order to survive a motion to dismiss under Rule 12(b)(6) "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Iqbal*, 129 S.Ct. at 1940.  A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Id.*  A court will "not accept as true conclusory allegations or unwarranted deductions of fact." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir.2000).

### B.    Prosecutorial Immunity (Individual Capacity Federal Claims)

Prosecutors performing the advocate's role as an officer of the Court are entitled to absolute immunity. *Buckley v. Fitzsimmons*, 509 U.S. 259, 273(1993).  A prosecutor's acts in furtherance of his role as an advocate "includes the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made." *Id.* Acts taken in both "initiating a prosecution and [in] presenting the State's case" are

covered by prosecutorial immunity. *Terwilliger v. Reyna* ,2021 WL 2850052 (5th Cir. 2021). Moreover, it is settled law that "prosecutors are absolutely immune from liability under § 1983 for their conduct before grand juries." *Burns v. Reed*, 500 U.S. 478, 490 n. 6 (1991). The prosecutor assigned to a criminal proceeding has the ultimate discretion to determine whether evidence should be  given to defense counsel as exculpatory and  involves the prosecutor's actions as an advocate of the State. "Such a decision [is] clearly intended by *Imbler* to be the type of prosecutorial function for which absolute immunity should be granted." *Carter v. Burch*, 34 F.3d 257, 262 (4th Cir.1994) (*citing Imbler v. Pachtman*, 424 U.S. 409 (1976)).

The decision to convene a grand jury to indict a suspect is  "intimately associated with the judicial phase of the criminal process," and even if done while lacking probable cause, is entitled to prosecutorial immunity. *Sanders v. City and County of San Francisco*, 226 Fed.Appx. 687 (2007) *quoting Imbler*. Where a Defendant's function is found to be intimately associated with the judicial process, prosecutors have been held immune from "using perjured testimony at trial, or suppressing material evidence at trial."  *Peterson v. Porter*, 2018 WL 7078667 *12  (D. Ore. 2018) quoting *Genzler v. Longanbach*, 410 F.3d 630, 637 (9th Cir. 2005).  A motion to dismiss is the proper vehicle to assert a claim of absolute immunity. *See Imbler*, 424 U.S. at 416.

### C.    Qualified Immunity  (Individual Capacity Federal Claims)

Qualified immunity protects government officials from individual liability insofar as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *White v. Pauly*, 137 S. Ct. 548, 552 (2017). A right is clearly established if it is sufficiently clear that "every reasonable officer" would have understood that what she is doing violates that right. *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015). Moreover, qualified immunity "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who

6

knowingly violate the law." *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008). Thus, if a Defendant could reasonably have believed under the circumstances that her conduct was not a violation of the plaintiff's constitutional rights, she cannot be held liable. *Simpson v. Hines*, 903 F.2d 400, 402 (5th Cir. 1990).  In this Circuit, a heightened pleading standard applies when an individual Defendant claims qualified immunity. *Anderson v. Pasadena Indep. Sch. Dist.*, 184 F.3d 439, 443 (5th Cir. 1999)). Here, the plaintiff "must allege specific conduct giving rise to a constitutional violation," *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002), and, as a matter of pleading "establish that the Defendant was either personally involved in the deprivation or that his wrongful actions were causally connected to the deprivation." *James v. Tex. Collin County*, 535 F.3d 365, 373 (5th Cir. 2008) (*citing Anderson*, 184 F.3d at 443).

### III. ARGUMENTS

**A.    Defendant Oliver Is Entitled to Absolute Immunity in Her Individual Capacity on the Federal Claims Pled in this Action**.

Plaintiff's complaint essentially alleges that defendants sought an indictment against him and prosecuted him in the absence of evidence to support the charges and instead, out of spite or ill will.  As currently pled, none of the claims in the Amended Complaint overcome Oliver's entitlement to absolute prosecutorial immunity. As detailed *infra*, as to all of the federal claims Turner has attempted to plead in this action, Oliver is entitled to absolute immunity from Turner's claims, arising as they do from her duties as a prosecutor in her role as advocate for the State of Mississippi.

Because the Court must approach the question of Defendant Oliver's access to absolute immunity functionally, Defendant returns to the actions alleged in the Amended Complaint and their connection to the prosecution of Turner.  It appears that the circumstances giving rise to this action began on August 30, 2019 when a student (J.B.) was allegedly assaulted by School Resource Officer Carter. (Amended Complaint at ¶ 5) Thereafter, Oliver allegedly came to the school within the context of participating

7

in the investigation of Carter. (*Id.*) In the process of investigating the claims against Carter, naturally she interviewed witnesses. (*Id.*) As a result of that investigation, "Oliver scheduled a probable cause hearing on or about September 19, 2019 for the school resource officer on one count of aggravated assault." (*Id.*) While Turner makes the bare allegation that "Oliver attempted to implicate Turner in the assault of the child claim" through these unidentified witnesses, these allegations are completely conclusory as to the specifics of Oliver's involvement in the overall investigation of Carter and that investigation's actual relation to Turner at that point in time.  Such conclusory allegations "fail to strip [her] of prosecutorial immunity". *Wooten v. Roach*, 964 F.3d 395, 411–12 (5th Cir. 2020). ("Absent a non-conclusory allegation of how [prosecutor] participated in ways that were investigatory, White is entitled to immunity.") citing *Buckley*, 509 U.S. at 274. *See also Lower v. City of Columbus*, 2016 WL 7230853 (S.D. Ohio 2016) ("A nod to the word "investigation," without more, does not cause [plaintiff's] complaint to survive the Defendants' motion to dismiss.")

Moreover, there is nothing contained in these allegations that would suggest that from August 30, 2019 until September 19, 2019, Oliver was acting in any role other than as a prosecutor and advocate for the State of Mississippi, well within the *Imbler* role.  *Imbler,* 424 U.S. at 431 ("[p]reparation, both for the initiation of the criminal process and for a trial, may require the obtaining, reviewing, and evaluating of evidence.")   Carter, not Turner, was an already identified suspect in the assault of J.B. Interviewing witnesses that would be used in the presentation of the state's case against Carter on behalf of the State of Mississippi is a prosecutorial role. Whatever else Plaintiff suspects this investigation entailed, it is clearly alleged to be confined to interviewing witnesses against Carter, the suspect,  and prosecutorial immunity would apply to these actions. *See  Cousin v. Small*, 325 F.3d 627, 635 (5th Cir. 2003) (per curiam) (where intent of the prosecutor's interview with the witness was to obtain

evidence he could use in presenting a case against a suspect that had already been identified, and not "to identify a suspect or establish probable cause" prosecutor entitled to absolute immunity). *See also  Brown v. City of Houston*, 297 F. Supp. 3d 748, 770–71 (S.D. Tex. 2017) (prosecutor's conduct in interviewing witnesses who would appear before the grand jury and presenting evidence to the grand jury before the indictment are "intimately associated with the judicial phase of the criminal process"); *Brandley v. Keeshan*, 64 F.3d 196, 201 (5th Cir.1995) (prosecutor retained absolute immunity despite allegations that he had directed the intimidation of witnesses in an effort to suppress their testimony); *Morrison v. Baton Rouge*, 761 F.2d 242 (5th Cir. 1985); *Faulkner v. Cty. of Kern*, 2006 WL 1795107, at *23 (E.D. Cal. June 28, 2006)

The next role we see Oliver assuming is within the context of her participation in a probable cause hearing for Carter, who has already had charges filed against hm by this point in time. (The hearing is to determine whether there is enough evidence to bind Carter over for action by the grand jury).  Neither subpoenaing Turner to testify at the probable cause hearing of Officer Carter nor the discussions that occurred between Turner and Oliver during that hearing are actionable. Turner was subpoenaed in pursuit of her prosecution of Carter and a "prosecutor is absolutely immune when she acts in her role as an advocate for the state by initiating and pursuing prosecution." *Beck v. Tex. State Bd. of Dental Examiners*, 204 F.3d 629, 637 (5th Cir. 2000) (*citing Burns v. Reed*, 500 U.S. 478, 491, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991)).

Thereafter, between the probable cause hearing and the January 31, 2020, indictments against Carter for Felonious Child Abuse and Turner  for Accessory after the Fact to Felonious Child Abuse, a grand jury convened, the particulars of which are discussed at paragraph 8 of the Amended Complaint.  Here, plaintiff discusses the alleged withholding of "exculpatory" evidence and the presentation of misleading

evidence and the failure to subpoena any witnesses on Turner's behalf. Again, however, all of these alleged acts or omissions by Oliver are cloaked with prosecutorial immunity. As to exculpatory and/or misleading evidence, *see Brown, supra.* 297 F. Supp. 3d at  770 ("Both the Supreme Court and the Fifth Circuit have held that prosecutors are entitled to absolute immunity even when they are alleged to have knowingly presented perjured testimony, failed to disclose exculpatory evidence, and engaged in other malicious acts, so long as the statements are related to the proceedings in which they were made.") *citing Doe v. Harris Cty*., 2017 WL 4402590, at *17 (S.D. Tex. Sept. 29, 2017). While withholding exculpatory evidence during the investigative phase of proceedings, and in conjunction with law enforcement, is treated differently, *Terwilliger v. Reyna*, 2021 WL 2850052 * 6 (5th Cir. 2021), when the allegation concerns acts or omissions taken in the context of grand jury proceedings, the result is the same and immunity applies. *See Cousin*, 325 F.3d at 635 ( failure to disclose exculpatory evidence is shielded by absolute immunity) *See* also *Carter v. Burch*, 34 F.3d 257 (4th Cir. 1994)(same); *Milstein v. Cooley*, 257 F.3d 1004 (9th Cir. 2001)(same); *Imbler,* 424 U.S. at 416.

As to Oliver's alleged failure to subpoena any witnesses on Turner's behalf, it is likewise settled that a prosecutor cannot be liable for damages for decisions on presenting evidence to a grand jury or selecting witnesses who will appear before the grand jury. *See Morrison supra,  Doe, supra.* ("Absolute immunity also protects a prosecutor when he evaluates evidence and presents that evidence at trial or before a grand jury even if the evidence is false.").  Finally, while the general animus that allegedly inspired Defendant Oliver to indict Turner had to do with prior confrontations between Turner as Vice (and later, Principal) of the school where her minor child attended and general ill will (Amended Complaint at ¶ 4), these motivations are not relevant as absolute immunity "is not defeated by a showing that a prosecutor acted

wrongfully or even maliciously.... The decision to prosecute ... even if malicious and founded in bad faith, is unquestionably advocatory[.]" *Lomaz v. Hennosy*, 151 F.3d 493, 498 n.7 (6th Cir. 1986). *Morgan v. Chapman*, 969 F.3d 238, 244 (5th Cir. 2020)(Absolute immunity shields prosecutors even when they initiate prosecution maliciously, wantonly, or negligently.) *Citing Rykers v. Alford*, 832 F.2d 895, 897 (5th Cir. 1987).

The next appearance Oliver has in Turner's chronology is on "August 27, 2020, in a pretrial hearing before Judge Barry Ford." (Amended Complaint at ¶ 8). Here again, the allegations against Oliver center around how witnesses were questioned before the grand jury and immunity applies. *Brown, supra*. 297 F. Supp. 3d at 770 *Buckley, supra* 509 U.S. at 273. *See also Morgan v. Chapman*, 969 F.3d 238, 244  (5th Cir. 2020).

Plaintiff's allegations that concern the period after the August, 2020 pretrial hearing and the eventual *nolle prosequi* of the indictment in October, 2020 relate to (1) Ashley Harris-Turner's earlier (February 2020) motion to recuse Oliver from the prosecution of Turner; (2) Judge Lewis-Blackmon's decision to recuse Oliver; and, (3) Oliver's petition to the Mississippi Supreme Court seeking review of that order. (Amended Complaint at  ¶¶  9-10). While Plaintiff appears to believe that statements made in judicial pleadings by Oliver are actionable ( Amended Complaint at  ¶¶ 13)[1] and likewise suggests her slander and defamation claims also arise out of statements made to the press at some unspecified time, these are not federal claims actionable

---

[1]The statements Turner points to are those set out in the response to the motion to recuse and related filings and are therefore, judicially privileged.

under section 1983. Therefore, the immunity issue does not arise.[2]

In sum and substance, this case is about Philip Gerard Turner's ultimate arrest and prosecution as an accessory from evidence derived during an investigation of the principal, Carter, which went through several stages identified in the complaint to include (1) a probable cause hearing; (2) grand jury proceedings; (3) pretrial proceedings; and, (4) subsequent dismissal. All at all material times, Oliver was acting squarely within her role as a prosecutor on behalf of the State of Mississippi in matters intimately associated with the judicial processes of the criminal court system of this state. That the State eventually abandoned the charge against Turner does not defeat her entitlement to absolute immunity,[3] nor suggest that probable cause for Turner's arrest and limited prosecution was at any time lacking. Plaintiff has failed to meet her burden of overcoming Defendant Oliver's immunity, and all of the Plaintiff's federal claims, arising as they do, out of Oliver's role in prosecuting Turner, should be dismissed, with prejudice.

**B.    Alternatively, Defendant Oliver Is Entitled to Qualified Immunity in Her Individual Capacity on the Federal Claims Pled in this Action.**

In the interest of completeness, Defendants would further evaluate Plaintiff's claims of false arrest, abuse of process, malicious prosecution, false imprisonment, due

---

[2]That said, had Plaintiff properly pled a defamation-plus claim, Oliver would be only entitled to qualified immunity in connection with this activity. *Buckley v. Fitzsimmons*, 509 U.S. 259, 273(1993). Plaintiff has failed to make out a *prima facie case* for this claim, however. *See e,g, Herb Hallman Chevrolet, Inc. v. Nash-Holmes*, 169 F.3d 636 (1999)("There are two ways to state a cognizable § 1983 claim for defamation-plus: (1) allege that the injury to reputation was inflicted in connection with a federally protected right; or (2) allege that the injury to reputation caused the denial of a federally protected right.") Oliver's alleged defamatory statements to the press do not even concern the investigation or charge against Turner.They either concern his employment or past high school and college records, and Turner had already been indicted at that point.

[3]Even were it shown that the investigators' work was defecient as to Turner, that would have no impact on Oliver's right to invoke the immunity. *See e.g. Broam v. Bogan*, 320 F.3d 1023, 1029 (9th Cir. 2003) ("[a] prosecutor is absolutely immune from liability for failure to investigate the accusations against a defendant before filing charges")

process and equal protection claims under a qualified immunity rubric.

The Equal Protection Clause of the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. The gravamen of this claim is the guarantee that all persons similarly situated should be treated alike. *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985); *Rolf v. City of San Antonio* , 77 F.3d 823, 828 (5th Cir. 1996). Turner has not alleged that he was treated differently than other persons similarly situated, has not identified similarly situated defendants, and the claim seems to serve as a proxy for his claim of selective prosecution. Absent facts pled that would offer that identification, the claims should be dismissed on the threshold issue of whether a constitutional claim has even been stated.  Moreover, Oliver is absolutely immune from Turner's claims of selective prosecution for the reasons stated above.

As to Turner's Due Process claims, there is no Fourteenth Amendment "liberty interest" or substantive due process right to be free from criminal prosecution unsupported by probable cause. *Albright v. Oliver*, 510 U.S. 266, 270-71 (1994). While, as evidenced by issuance of the indictment against Carter, probable cause did exist to charge him with the offense that was later dismissed, there is no substantive due process rights implicated by the facts alleged in the Complaint.

Likewise, Turner's claims do not implicate the safeguards of procedural due process contained in the Fourteenth Amendment. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.' " *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). Turner was provided that opportunity. To the extent the claim here is related to Turner's claims of false arrest (discussed *infra*,) it is the Fourth Amendment, rather than the due process clause of the Fourteenth Amendment which would apply. *Thomas v. Kippermann*, 846 F.2d 1009, 1011 (5th Cir.1988).

13

As [t]here is no (federal) constitutional right to be free from malicious prosecution" in this Circuit, *Morgan v. Chapman*, 969 F.3d 238, 244 (5th Cir. 2020), Oliver is also entitled to qualified immunity to the extent Turner posits a § 1983 malicious prosecution claim.  Additionally, as stated before, Oliver is absolutely immune from these claims for the reasons discussed above.

As to the false arrest claims, absent facts pled that would show that Oliver personally participated in this alleged violation, dismissal is warranted.  *See Jones v. Lowndes County, Miss*., 678 F.3d 344, 349 (5th Cir. 2012); *Wernecke v. Garcia*, 591 F.3d 386, 401 (5th Cir. 2009). Oliver did not inform law enforcement that probable cause existed for Turner's  arrest. Instead, she convened a Grand Jury, and Plaintiff was not arrested until after the indictment was returned. Moreover, as pled, Turner's arrest followed Carter's arrest, both of which were subsequent to a probable cause hearing as well as proceedings before the grand jury and Oliver, acting as prosecutor, is immune for her actions taken before those bodies. While the charge against Turner was eventually *nolle prosequi*, at what step of these proceedings would Oliver be on notice that the charge against Turner was false and lacking in probable cause? To be sure, Turner generally alleges that Oliver acted maliciously toward Turner because of past run-ins.

But where the "facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party." *Bolling v. Hood*, 2010 WL 5060471, at *3 (S.D. Miss. Dec. 6, 2010) *quoting Taylor v. Gregg*, 36 F.3d 453, 455 (5th Cir.1994). To meet this objection, Turner in the main, simply recounts conclusory statements concerning three witnesses who testified to the grand jury and (1) were not asked any questions about Turner's assistance to Carter, and (2) believed they were before the jury to testify about Carter. (Amended Complaint at ¶¶ 8). Assuming Turner

was falsely arrested as a result of these proceedings, these allegations prove too little. Not asking witnesses about their knowledge of confederates to the principal does not evince the withholding of material exculpatory evidence. The fact that Turner (at all times represented by counsel) was not allowed to bring witnesses to the grand jury certainly does not raise an inference that Oliver's alleged ill will or malice controlled those proceedings leading to his arrest. At one time,Turner was asked to be a witness when Oliver was exploring probable cause as regards to the suspect Carter. He refused, within his rights, that invitation. Yet, none of this indicates that the probable cause for his arrest that eventually came out of the grand jury's proceedings had been vitiated by Oliver's failure to expressly focus on Turner during those proceedings. In any event, "[o]fficials should receive the protection of qualified immunity unless the law is clear in the more particularized sense that reasonable officials should be on notice that their conduct is unlawful." *Wernecke*, 591 F.3d at 393.

Here, the inquiry turns on whether it was clearly established that the Fourth Amendment prohibited Oliver's conduct "in the situation [she] confronted" during the grand jury proceedings in light of controlling authority from other cases. *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004). Defendant suggests the answer is clearly that she would not, and thus, she is likewise entitled to qualified immunity in connection with all facets of the investigation leading up to the arrest of Turner, and dismissal is appropriate on this alternative basis.

This same analysis (lack of personal participation/immunity) would also apply to Turner's abuse of process claim. Here, Turner, does not even identify the essential elements of the claim or how process was misused for ulterior motives in the first instance.  In any event, as there is "no constitutional right to be free from abuse of process," Oliver would also be entitled to qualified (as well as absolute) immunity as to this claim as well. *Morgan*, 969 F.3d at 247. And while Turner never pleads that he was

actually imprisoned at any point, again, there is no factual basis for such a claim against Oliver in the first instance.

In sum, Plaintiff has failed to plead facts which, if true, would overcome Oliver's claim to qualified immunity. Turner has failed to show how Oliver is not entitled to this defense by establishing, through nonconclusory allegations, that Oliver's allegedly wrongful conduct violated clearly established law.  Pleadings that do not allege with factual detail and particularity, the basis for the claim so that the court may determine whether Oliver could not successfully maintain the defense of immunity, are procedurally infirm. Dismissal of Oliver on this alternative basis is warranted.

**C.    Defendant Oliver in Her Official Capacity, Defendant Yazoo County District Attorney's Office, and Defendant the State of Mississippi Are Entitled to  Eleventh Amendment Immunity on All Claims Pled in this Action.**

The Eleventh Amendment provides that: "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend XI.  The State of Mississippi has not consented nor waived its Eleventh Amendment  immunity as to claims brought against it in federal court. *See* Miss. Code Ann. § 11-46-1, *et. seq*. "In fact, the Mississippi Legislature has explicitly indicated its intent to preserve the State's immunity for suits brought in federal court." *Towns v. Mississippi Dep't of Corr.*,  2020 WL 1249904, at *4 (N.D. Miss. Mar. 16, 2020) *citing*  Miss. Code Ann. § 11-46-5(4) ("Nothing in this chapter shall be construed in waive the immunity of the state from suit in federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States.").

Because all of the official capacity claims (both state and federal) are subject to Eleventh Amendment immunity, regardless of the relief requested against  Oliver in her

official capacity (declaratory or damages), dismissal is warranted. *See Quern v. Jordan*, 440 U.S. 332, 337 (1979).  All claims against Oliver in her official capacity are likewise claims against her office, Defendant Yazoo County District Attorney's Office, and against Defendant the State of Mississippi and should be dismissed.  *Pennhurst State Sch. And Hosp. v. Halderman*, 465 US. 89, 120-21 (1984).  *See also Aguilar v. Texas Dept. Of Criminal Justice*, 160 F.3d 1052, 1053 (5th Cir. 1998).

### D. Defendant Oliver in Her Official Capacity, Defendant Yazoo County District Attorney's Office, and Defendant the State of Mississippi Are Entitled to Dismissal on All Federal  Claims Pled in this Action Because These Defendants Are Not Persons Subject to Liability under  42 U.S.C. § 1983.

Plaintiff is only seeking monetary relief through this action. (Complaint at ¶19(a)-(e)). 42 U.S.C. § 1983 is the exclusive remedy for  Plaintiff's damage claims against Defendants for violations of Due Process and the Equal Protection Clauses of the United States Constitution. Defendant District Attorney Akillie Malone Oliver is not a "person" within the meaning of  42 U.S.C. § 1983 in her official capacity. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989); *Hafer v. Melo*, 502 U.S. 21, 26 (1991) ("[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983" and are entitled to immunity whether the claim arises under state or federal law). Also Defendant Yazoo County District Attorney's Office as an agency/political subdivision of the State of Mississippi, is not a "person" within the meaning of  42 U.S.C. § 1983. *Cheramie v. Tucker*, 493 F.2d 586, 587 (5th Cir. 1974). Moreover, Defendant the State of Mississippi, is not a "person" within the meaning of 42 U.S.C. § 1983. *Monroe v. Pape*, 365 U.S. 167 (1961). Because neither the Yazoo County District Attorney's Office, the State Of Mississippi, nor Defendant Oliver in her official capacity are  "persons" within the meaning of 42 U.S.C. § 1983, dismissal of all federal damage claims pled in this action against all named Defendants is warranted on this alternative basis.

**E.    The Court Should Dismiss All of the State Law–Based Claims Pursuant to 28 U.S.C. § 1367(c)(3).**

All of the Plaintiff's federal claims are subject to dismissal. Turner has failed to overcome Oliver's entitlement to absolute prosecutorial immunity and, relatedly, her right to qualified immunity on the claims pled. Plaintiff may only proceed though Section 1983 on her damage claims against Defendants, and none of the official capacity defendants are "persons" within the meaning of that remedial provision. Moreover, the State of Mississippi, the District Attorney's Office  and Defendant Oliver in her official capacity have not waived their entitlement to Eleventh Amendment Immunity requiring their dismissal from this action.  Pursuant to 28 U.S.C. § 1367(c)(3), dismissal is appropriate where, as here, there is no federal interest advanced by retaining jurisdiction simply to decide any remaining state law-based dispute. 28 U.S.C.  § 1367 (Supplemental Jurisdiction), provides:

(a)    Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution...

\*        \*        \*        \*

(c)    The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if-

(1)    the claim raises a novel or complex issue of State law,

(2)    the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3)    ***the district court has dismissed all claims over which it has original jurisdiction,*** or

(4)    in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C.  § 1367 (emphasis supplied). The dismissal of all of the state claims against Defendants  pursuant to 28 U.S.C. § 1367(c)(3) is appropriate where, as here, there is

no federal interest advanced by retaining jurisdiction simply to decide any remaining state law-based dispute between Oliver and Turner. This is also a question of law for the Court to decide.  *See Certain Underwriters at Lloyd's, London v. Warrantech Corp*., 461 F.3d 568, 578 (5th Cir. 2006) (explaining "it is our 'general rule' that Courts should decline supplemental jurisdiction when all federal claims are dismissed or otherwise eliminated from a case"); *Carnegie -Mellon Univ. v. Cohill* , 484 U.S. 343, 350 (1988); (general rule is that federal court should decline to exercise jurisdiction over pendent state claims when all federal claims are disposed of prior to trial); *Batiste v. Island Records Inc*., 179 F.3d 217, 227 (5th Cir. 1999); *Parker & Parsley Petroleum Co. v. Dresser Indus*. , 972 F.2d 580, 585 (5th Cir. 1992) (same). Accordingly, Defendants ask that this Court to dismiss Plaintiff's state law-based claims against defendants without prejudice should this Court determine Defendants motion to have merit.

**F.    In the Alternative, the Court Should Dismiss All of the Claims for Turner's Failure to Adhere to the Pleading Requirements of Fed. R. Civ. P. 8 and *Ashcroft v. Iqbal*.**

Some or all of Turner's claims are insufficiently pled in that the court cannot not infer more than the mere possibility of misconduct on behalf of Oliver during the course of Turner's prosecution, allegedly the result of a personal vendetta against the Plaintiff. At all times relevant, Oliver is alleged to have been acting wholly within her role as District Attorney investigating a case of felonious child abuse. Despite the allegations of ill will, there are no allegations that Oliver is on a personal vendetta against Turner apart from her role as prosecutor for Yazoo County, Mississippi.  That being so, its strains credulity to suggest, as Turner simply concludes, that Oliver "conducted her own investigation" into the claims against Carter. (Amended Complaint at ¶ 5. ) There is no factual basis pled for this unwarranted inference, nor facts to support this allegation, nor even the following contention that Oliver tried to get the witnesses to "implicate Turner in the assault of the child" but apparently the witnesses would not "corroborate [Oliver's]

theory of assault."  (Amended Complaint at ¶ Id.) These allegations are completely conclusory and run afoul of the teachings of *Iqbal* and progeny:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the *reasonable inference that the defendant is liable for the misconduct alleged*. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief."*

*Iqbal*, 129 S.Ct. at 1949 (emphasis added).  It should be kept in mind that Turner does not allege that Carter did not commit the crime charged; Turner simply attacks the proceedings against Carter once they resulted in a charge against himself. And the method of that attack is telling.  Here, whenever it is convenient, Plaintiff uses the undifferentiated  term "defendants" to describe actions taken during the proceedings involving Turner and Carter. *See* Amended Complaint at  ¶ 8) ("Defendants further withheld exculpatory evidence and presented misleading information to the grand jury . . . [.] [T]he defendants selectively prosecuted Turner . . .[.] [T]he defendants maliciously secured an indictment on Turner without subpoenaing any witnesses on his behalf for the grand jury. .[.] ) After *Iqbal,* it is the case that pleadings fail which do not contain facts sufficient to cross the line between the possible and the plausible as to "the defendant. . . liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. Where, as here, the alleged wrongful conduct is stated in such conclusory fashion and in a manner that implicates both "persons" within and without the meaning of Section 1983 as well as "unknown" defendants A-D, neither the court nor the parties may draw a  reasonable inference as to which 'defendant is liable for the misconduct alleged".

Even as to Turner's claims of slander and defamation, Oliver is alleged to have acted and/or made statements through pleadings originating in the District Attorney's

Office by the District Attorney or in some unknown (and unidentified) "news" story. Plaintiff has wholly failed to allege how, in particular, Oliver acted outside her role as advocate for the State of Mississippi during any or all of these occasions.  Legal conclusions and conclusory allegations which merely recite the elements of a claim are not well pled factual allegations. Rule 12(b)(6) of the Federal Rules of Civil Procedure requires dismissal of a cause of action when the plaintiff has failed to state a claim upon which relief can be granted.  Fed.  R. Civ. P. 12(b)(6).

G.    **Mississippi Tort Claims Act Defenses**

In the alternative, the Mississippi Tort Claims Act provides the exclusive civil remedy for tort actions against the state, its political subdivisions, and its employees. Governmental employees, such as Oliver may be sued in her official capacity under the MTCA, "but no employee shall be held personally liable for acts or omissions occurring within the course and scope of the employee's duties." Miss. Code Ann. § 11–46–7(2).

Miss. Code Ann. § 11-46-9(1)(d) provides that a governmental entity and its employees, acting within the course and scope of their employment or duties, are not liable for "... the exercise or performance or failure to exercise or perform a discretionary function or duty ... whether or not the discretion be abused."   Because Oliver was acting within the course and scope of her employment with the State of Mississippi, in the exercise of "personal deliberation, decision and judgment" at all times relevant to Turner's allegations against Oliver and the undifferentiated Defendants, Oliver is immune from liability pursuant to Miss. Code Ann. § 11-46-9(1)(d). Additionally, because  Oliver, acting in the course and scope of her duties with the Yazoo County District Attorney's Office, is entitled to immunity from liability for negligence/gross negligence-based claims pursuant to Miss. Code Ann. § 11-46-7(2) and Turner has failed to factually plead a *prima facie* case for Oliver's liability to Turner

21

for slander, defamation, abuse of process, malicious and/or selective prosecution. While Defendant Oliver is not immune from liability for Plaintiff's claim for intentional infliction of emotional distress, to the extent it includes an element of malice, *Franklin Collection Serv. v. Kyle*, 955 So. 2d 284, 290 (Miss. 2007), holds that she is immune for any claims of Negligent Infliction of Emotional Distress pursuant to section 11-46-9(1)(d).  In any event,  because Turner has failed to plead nonconclusory facts showing conduct on the part of Oliver  "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community," *Raiola v. Chevron* U.S.A., Inc., 872 So. 2d 79, 85 (Miss. Ct. App. 2004), these allegations should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). Liability here does not extend to mere insults, indignities, threats, annoyances, petty oppression, or other trivialities, *Brown v. Iner-City Federal Bank for Savings*, 738 So.2d 262, 264 (Miss. Ct. App. 1999) and, thus, a garden-variety malicious prosecution case, such as that involved here, will not support prosecution of the claim. *Lee v. Golden Triangle Planning & Dev. Dist., Inc*., 797 So. 2d 845, 848 (Miss. 2001).

Moreover, probable cause for the investigation and arrest of Carter and Turner extinguish Turner's claims for abuse of process, malicious and/or selective prosecution. Additionally and/or alternatively, Plaintiff's claims for slander and/or defamation are judicially privileged and/or barred by the applicable statute of limitations.  Statements in a pleading filed in a court of law, even if those statements are defamatory, are privileged.  *Netterville v. Lear Siegler, Inc*.,397So.2d1109 (Miss.1981)(recognizing litigation privilege) *See also* § 586 of the  Restatement (Second) of Torts ("attorney is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a judicial proceeding, or in the institution of, or during the course and as a part of a judicial proceeding in which he participates as counsel.")

WHEREFORE, PREMISES CONSIDERED, Defendants respectfully prays that Defendants' Motion to Dismiss be granted and for all other relief the Court finds warranted in the premises. .

Respectfully submitted this the 28th day of July, 2021.

AKILLIE MALONE OLIVER, INDIVIDUALLY AND IN HER OFFICIAL CAPACITY AS DISTRICT ATTORNEY; YAZOO COUNTY DISTRICT ATTORNEY'S OFFICE; THE STATE OF MISSISSIPPI

By: s/Alan M. Purdie

Alan M. Purdie, MSB# 4533
PURDIE & METZ, PLLC
Post Office Box 2659
Ridgeland, Mississippi 39158
Telephone: (601) 957-1596
Facsimile:   (601) 957-2449
E-mail:       apurdie@purdieandmetz.com

CERTIFICATE OF SERVICE

I, Alan M. Purdie, hereby certify that I have this date electronically filed the foregoing document with the Clerk of Court using the CM/ECF System, which sent notification of such filing to all attorneys of record.

This, the 28th day of July, 2021.

By: /s/ Alan M. Purdie